KIMBERLY VOGEL, APPELLANT AND CROSS-APPELLEE, V.
BRADLEY VOGEL, APPELLEE AND CROSS-APPELLANT.
637 N.W.2d 611

Filed January 11, 2002. No. S-01-234.

Michael W. Heavey, of Colombo & Heavey, P.C., for appellant.

Van A. Schroeder, of Bertolini, Schroeder & Blount, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## I. NATURE OF CASE

Kimberly Vogel appeals, and Bradley Vogel cross-appeals, from the order of the district court for Sarpy County which modified the parties' decree of dissolution. Kimberly, the custodial parent, was granted permission to permanently remove the parties' children from Nebraska to Virginia so that she could accompany her new husband, who was transferred from Offutt Air Force Base in Nebraska to Washington, D.C. The district court denied Bradley's cross-petition for change of custody. In its order, the district court also took legal custody of the parties' children; provided for annual transfer of physical custody of the children between the parties in the event Kimberly's husband, who is in the U.S. Air Force, is transferred overseas; awarded visitation rights to Bradley; required Kimberly to pay all travel expenses for such visitations; and provided for an alternate visitation schedule to take effect in the event Kimberly and Bradley establish residences within 50 miles of one another at any time in the future. We affirm in part, in part reverse and remand, and in part vacate certain portions of the decision of the district court.

## II. STATEMENT OF FACTS

Bradley and Kimberly were married in 1988 and were divorced pursuant to a decree of dissolution entered July 25, 1997. Two children were born during the marriage, Brandon, born April 30, 1989, and Chelsea, born September 28, 1991. Prior to the modification proceedings which give rise to this appeal, legal custody and physical possession of the two children were given to Kimberly, subject to reasonable and liberal visitation by Bradley.

Subsequent to the dissolution of the parties' marriage, Kimberly began a relationship with Kent Butler, a master sergeant in the U.S. Air Force. When they began their relationship, Butler was stationed at Offutt Air Force Base. Fourteen months into the relationship, Butler was transferred to Washington, D.C., a transfer which Butler unsuccessfully resisted. Despite Butler's transfer, the relationship continued, and he and Kimberly were married on April 21, 2000.

On March 22, 2000, Kimberly filed an application to modify the decree of dissolution, requesting permission to permanently remove the children from Nebraska so that she and the children could move to Virginia to reside with Butler. On May 2, Bradley answered, denying that removal was in the best interests of the children. Bradley cross-petitioned for a change of custody to him and an order directing Kimberly to pay child support. The district court appointed a guardian ad litem on behalf of the children on May 16.

Trial was held August 23, 2000. At trial, both Kimberly and Bradley presented evidence which they assert supported their respective positions on removal and custody. Kimberly testified that the children got along well with her and were happy living with her. She testified to facts which illustrated her caregiving. She testified that she and Butler could provide a good home and, by combining their incomes, could provide a good standard of living for the children in Virginia. Kimberly also testified that in addition to court-ordered visitation, she and Butler expected to return to Nebraska periodically to visit extended family and that she anticipated that the children would see Bradley on these occasions. Bradley testified that he had exercised frequent visitation with the children since the divorce and that he was actively

involved with them during such visitation. Bradley testified that his extended family, including his two brothers, their children, and his parents lived in the Omaha area and that the children had close relationships with such extended family. Bradley testified to certain incidents which he asserts illustrated Kimberly's improper caregiving. Kimberly disputed this testimony.

The report of the guardian ad litem was also entered into evidence. The guardian ad litem concluded in her report that Kimberly appeared to have a legitimate reason for requesting removal and that "[t]here does not appear to be any strong evidence to suggest why the children should be removed from their mother's care and placed into their father's care at this time." The guardian ad litem also noted in her report that while Kimberly had not voiced complaints to her regarding Bradley, Bradley had multiple complaints with regard to the quality of Kimberly's caregiving. The guardian ad litem testified at trial, and in response to a question regarding such complaints, the guardian ad litem acknowledged that Bradley's objections might have been motivated by hostility and that "[h]e struck me as angry."

The district court entered its order October 2, 2000. The district court denied and dismissed Bradley's application for change of custody and sustained Kimberly's application for leave to remove the children from Nebraska subject to certain conditions, including the following, as listed under paragraph 2 of the court's order:

A. The district court retained continuing jurisdiction over and assumed legal custody of the children, while ordering that Kimberly retain primary possession subject to Bradley's right of reasonable visitation.

B. Kimberly was granted leave to remove the children to Virginia, but could not permanently remove the children to a state other than Virginia or Nebraska or to a location outside the United States without further order of the district court.

C. In the event Butler is ever transferred to a location outside the United States and Kimberly elects to join him at such location, the district court ordered that the following would then apply:

(1) Kimberly would be required to remain in the United States and keep the children enrolled in their then current schools until they were released from school;

(2) possession of the children would then be transferred to Bradley for a period of 1 year;

(3) possession of the children would then be transferred to Kimberly for a period of 1 year;

(4) possession of the children would then be transferred to Bradley for a period of 1 year;

(5) possession of the children would then be returned to Kimberly.

D. While the children were residing in Virginia, a visitation schedule for Bradley was set which included, inter alia, "[t]he summer school break, except for the first and last five days thereof, each year," and Kimberly was required to pay the children's travel expenses associated with visitation.

E. In the event Kimberly and Bradley establish residences within 50 miles of one another at any time in the future, then the visitation schedule set forth in the October 2, 2000, order would become ineffective and the visitation schedule set forth in the district court's prior order of November 23, 1998, would again become effective.

On October 11, 2000, Kimberly moved for a new trial challenging (1) the district court's assumption of legal custody of the children, (2) the provision of the order which becomes effective on the condition that Butler is transferred overseas and she elects to join him, (3) the portion of the visitation schedule which gives Bradley visitation for almost the entire summer school break, and (4) the provision requiring Kimberly to pay all visitation-related travel expenses. In the alternative, Kimberly moved to enter a judgment notwithstanding the verdict (1) deleting the provision under which the district court assumes legal custody of the children, (2) deleting the provision which becomes effective only if Butler is transferred overseas and she elects to join him, (3) modifying the visitation schedule such that Bradley would have visitation during the first half of the summer school break in even-numbered years and during the second half of the summer school break in odd-numbered years, and (4) modifying the provision relating to visitation travel expenses to provide that Bradley be responsible for travel expenses from Virginia to Nebraska and that Kimberly be responsible for travel expenses from Nebraska to Virginia. The

district court overruled Kimberly's motion. Kimberly appealed the order, and Bradley cross-appealed.

## III. ASSIGNMENTS OF ERROR

Kimberly asserts in her appeal that the district court erred in (1) taking legal custody of the children from her and placing legal custody of the children in the district court when neither she nor Bradley had been shown to be unfit, (2) providing for an annual transfer of possession which would take effect in the event that Butler is transferred overseas and Kimberly elects to join him, (3) awarding Bradley visitation for almost the entire summer school break, (4) requiring Kimberly to pay all travel expenses associated with visitation, and (5) establishing an alternate visitation schedule in the event Kimberly and Bradley establish residences within 50 miles of one another at any time in the future.

In his cross-appeal, Bradley asserts that the district court erred in (1) failing to change custody from Kimberly to him, (2) permitting Kimberly to remove the children from Nebraska to Virginia, (3) failing to compute reasonable child support to be paid by Kimberly to him, and (4) denying Bradley the right to call the children to the witness stand to testify regarding their preferences.

## IV. STANDARD OF REVIEW

Child custody determinations, and visitation determinations, are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Jack v. Clinton*, 259 Neb. 198, 609 N.W.2d 328 (2000). A judicial abuse of discretion requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result. *Id.*

## V. ANALYSIS

### 1. APPEAL

(a) District Court Assuming Legal Custody of Children

Kimberly claims that the district court abused its discretion by taking legal custody of the children without a showing that

she or Bradley was unfit. Prior to these modification proceedings, the district court had awarded legal custody to Kimberly.

In its October 2, 2000, order, the district court did not explain its reasons for assuming legal custody of the children. A review of the bill of exceptions shows that at trial, the district court commented that it was going to take legal custody of the children so that "the Uniform Child Custody [Jurisdiction] Act [Neb. Rev. Stat. § 43-1201 et seq. (Reissue 1998)] will not apply" and that "all further proceedings involving these children will take place in this court."

In *Ensrud v. Ensrud*, 230 Neb. 720, 433 N.W.2d 192 (1988), this court found that pursuant to Neb. Rev. Stat. § 42-364 (Reissue 1998), a district court may in certain circumstances obtain and retain legal custody of a minor child, in proceedings to dissolve a marriage, and grant a parent physical custody of the child. We stated in *Ensrud* that

"[w]hen the best interests of the children, in regard to custody, is not clear, the court may, and should, place custody in the court . . . .

"It is evident that when a court finds it necessary to place custody of minor children in the court, it does so because it is doubtful that it is cognizant of the full story relating to the best interests of the children and of the propriety of awarding custody to one of the parties. Such an order is ordinarily temporary and probationary in nature and reserves in the court the power to make further summary disposition of minor children when it becomes apparent that their best interests require it. There has not been a final determination of fitness in regard to either party. That question remains open and subject to determination after further notice and hearing."

230 Neb. at 725, 433 N.W.2d at 196 (quoting *Bartlett v. Bartlett*, 193 Neb. 76, 225 N.W.2d 413 (1975)).

In *State ex rel. Reitz v. Ringer*, 244 Neb. 976, 510 N.W.2d 294 (1994), *overruled in part on other grounds, Cross v. Perreten*, 257 Neb. 776, 600 N.W.2d 780 (1999), this court concluded that the trial court was not required to determine that both parents were unfit before taking custody of a child. Instead, this court concluded in *State ex. rel. Reitz* that "[t]he trial court

properly took temporary custody of the child when it was unsure either parent was fit." 244 Neb. at 983, 510 N.W.2d at 300.

In the present case, the district court neither found both parents to be unfit nor indicated that it was unsure whether either parent was fit. At trial, the district court stated that "it's clear that both of these parents are good parents to some extent, and to some extent they leave a little bit to be desired about the way they're interacting with each other." We do not read this comment to be a finding of unfitness or questionable fitness as required under *State ex rel. Reitz*. The district court further stated at trial that it had some concerns regarding the effect of removal on the children, "plus the fact that the new spouse may be transferred or have an assignment somewhere else where we're going to [be] back in here again."

We conclude that the district court abused its discretion by assuming legal custody of the children in the present case. Our de novo review of the record does not reveal that either parent is unfit or of questionable fitness. Instead, the record shows that the district court assumed legal custody of the children because it was concerned about the effect of removal or the possibility of further moves which may be required by Butler's employment. The record indicates that the district court was concerned that if any further modifications were required, such modifications should be made by it rather than by a court in another jurisdiction. Such concerns about potential issues do not justify the district court's present assumption of legal custody of the children. See *State ex rel. Reitz v. Ringer, supra*. We therefore reverse that portion of the district court's order in which it assumed legal custody of the children and, for the reasons explained *infra*, remand with directions to return legal custody of the children to Kimberly.

### (b) Conditional Orders Regarding Physical Possession and Visitation

Kimberly claims that the district court abused its discretion by entering orders which would become effective upon the occurrence of certain conditions. Specifically, the district court (1) ordered a new schedule for physical possession of the children in the event Butler is transferred overseas and Kimberly elects to join him and (2) ordered a new visitation schedule in

the event Kimberly and Bradley establish residences within 50 miles of one another.

We have stated that if a judgment looks to the future in an attempt to judge the unknown, it is a conditional judgment. *Simons v. Simons*, 261 Neb. 570, 624 N.W.2d 36 (2001). A conditional judgment is wholly void because it does not "perform in praesenti" and leaves to speculation and conjecture what its final effect may be. *Custom Fabricators v. Lenarduzzi*, 259 Neb. 453, 610 N.W.2d 391 (2000); *Village of Orleans v. Dietz*, 248 Neb. 806, 539 N.W.2d 440 (1995).

The provision contained in paragraph 2C of the district court's October 2, 2000, order concerns custody matters in the event Butler is transferred overseas and Kimberly elects to join him, and the provision contained in paragraph 2E concerns visitation matters in the event Kimberly and Bradley establish residences within 50 miles of one another. We conclude that such orders are conditional in that they do not "perform in praesenti" and become effective only upon the happening of certain future events which may or may not occur. Whether such orders will ever become effective is speculative. The impact of such potential events on the children's best interests and the proper judicial response to the potential events identified in the orders complained of are better assessed at the time of their occurrence.

The provisions complained of in paragraphs 2C and 2E of the district court's order of October 2, 2000, are void and severable from the valid portion of the order. See *Cross v. Perreten*, 257 Neb. 776, 600 N.W.2d 780 (1999). We therefore order such portions of the district court's order vacated.

(c) Visitation Schedule and Travel Expenses

Finally, Kimberly claims that the district court abused its discretion in entering certain orders regarding visitation. Specifically, she objects to those portions of the October 2, 2000, order giving Bradley visitation for almost the entire summer school break and requiring her to pay all costs of travel associated with visitation.

In her arguments regarding summer visitation, Kimberly cites to *Farnsworth v. Farnsworth*, 257 Neb. 242, 597 N.W.2d 592 (1999), a removal case in which this court found to be reasonable

a visitation schedule which gave the noncustodial parent a 6 weeks' summer visitation. Kimberly asserts that "[a]nything more constitutes an abuse of discretion." Brief for appellant at 11. However, in *Bondi v. Bondi*, 255 Neb. 319, 586 N.W.2d 145 (1998), we affirmed a visitation schedule which gave the non-custodial parent a summer visitation commencing 1 week after the beginning of the summer break and terminating 1 week before the conclusion of the summer break. In neither *Farnsworth* nor *Bondi* did we state that only a certain mathematical amount of visitation could be considered reasonable, and we decline to do so now. Instead, the determination of reasonableness is to be made on a case-by-case basis.

We have said that generally, a reasonable visitation schedule is one that provides a satisfactory basis for preserving and fostering a child's relationship with the noncustodial parent. *Farnsworth v. Farnsworth, supra.* Given the facts of this case, we conclude that the visitation schedule is reasonable and that the district court did not abuse its discretion in setting the summer visitation schedule. We therefore affirm that portion of the district court's order.

Regarding the challenged provisions of the October 2, 2000, order requiring Kimberly to pay all travel expenses associated with visitation, Kimberly again cites to *Farnsworth* in which the parties were ordered to split travel expenses for certain visitations and the noncustodial parent was required to pay the remaining expenses associated with visitations. Kimberly argues that in a removal situation, given the reduced visitation with the noncustodial parent, the custodial parent typically bears a greater economic burden in supporting the children and that it is unfair to further impose the entire economic burden of visitation on the custodial parent. Kimberly claims that the order imposing travel expenses on her was meant to "punish the custodial parent for being the one 'who has chosen to move these children'" and that the district court abused its discretion in making such order. Brief for appellant at 13.

As with other visitation determinations, the matter of travel expenses associated with visitation is initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be

affirmed absent an abuse of discretion. As with the summer visitation schedule, neither *Farnsworth* nor any other case sets an immutable standard for the allocation of travel expenses, and instead the determination of reasonableness is made on a case-by-case basis.

We have reviewed the record and note that there was evidence regarding the respective incomes of the parties, and the district court could reasonably have concluded that Kimberly could more readily bear the expenses of travel occasioned by her removal of the children. Such a determination is not a punishment but an arrangement which is within the district court's discretion based on the facts of the case. We conclude that the district court did not abuse its discretion in ordering Kimberly to pay all travel expenses associated with visitation.

## 2. CROSS-APPEAL

### (a) Modification of Custody, Removal, and Child Support

Bradley cross-appeals and assigns error to the portions of the district court's October 2, 2000, order granting Kimberly permission to remove the children from Nebraska to Virginia, denying his motion to modify custody, and failing to order Kimberly to pay child support to him. Because these three issues are related, they will be discussed together.

■ Ordinarily, custody of a minor child will not be modified unless there has been a material change of circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. *Brown v. Brown,* 260 Neb. 954, 621 N.W.2d 70 (2000). The party seeking modification of child custody bears the burden of showing such a change in circumstances. *Id.*

■ We have stated that removal of a child from the state, without more, does not amount to a change of circumstances warranting a change of custody. *Id.* Nevertheless, such a move when considered in conjunction with other evidence may result in a change of circumstances that would warrant a modification of the decree. *Id.* In considering a motion to remove a minor child to another jurisdiction, the paramount consideration is whether the proposed move is in the best interests of the child. *Jack v. Clinton,* 259 Neb. 198, 609 N.W.2d 328 (2000).

In his motion to modify custody of the children, Bradley does not assert that such modification is required because Kimberly is unfit, but, rather, that the modification is required because Kimberly has indicated her intention to move to Virginia, proximate to Washington, D.C. Essentially, Bradley contends that it would be in the best interests of the children to remain in Nebraska. The resolution of both Kimberly's motion to remove the children and Bradley's motion for a change of custody depends on a consideration of whether the best interests of the children are served by allowing them to remain in Kimberly's custody and move with her to Virginia or by transferring their custody to Bradley and allowing them to stay in Nebraska.

■ In order to prevail on a motion to remove a minor child to another jurisdiction, the custodial parent must first satisfy the court that he or she has a legitimate reason for leaving the state. After clearing that threshold, the custodial parent must next demonstrate that it is in the child's best interests to continue living with him or her. *Jack v. Clinton, supra*; *Farnsworth v. Farnsworth*, 257 Neb. 242, 597 N.W.2d 592 (1999). Although the district court in its order did not explicitly discuss legitimate reasons or the best interests of the children in deciding these motions, the district court did grant Kimberly permission to remove the children and therefore implicitly found that she had a legitimate reason and that removal was in the best interests of the children.

■ Kimberly's asserted reason for leaving the state was to reside with Butler who serves in the Air Force and was restationed to Washington, D.C. We have previously held that a move to reside with a custodial parent's new spouse who is employed and resides in another state may constitute a legitimate reason for removal. See, *Harder v. Harder*, 246 Neb. 945, 524 N.W.2d 325 (1994); *Maack v. Maack*, 223 Neb. 342, 389 N.W.2d 318 (1986). We have further stated:

> " 'If there is a legitimate reason for the custodial parent's decision to leave the jurisdiction, the minor child will be allowed to accompany the custodial parent if the court finds it to be in the best interests of the child to continue to live with that parent. . . . Custody is not to be interpreted as a sentence to immobility.' "

*Harder*, 246 Neb. at 949, 524 N.W.2d at 328 (quoting *Demerath v. Demerath*, 233 Neb. 222, 444 N.W.2d 325 (1989)). Following our de novo review, we conclude that the district court did not abuse its discretion in determining that Kimberly had satisfied the threshold issue of showing a legitimate reason for leaving the state.

In determining whether removal to another jurisdiction is in the child's best interests, the trial court considers (1) each parent's motives for seeking or opposing the move; (2) the potential that the move holds for enhancing the quality of life for the child and the custodial parent; and (3) the impact such a move will have on contact between the child and the noncustodial parent, when viewed in the light of reasonable visitation arrangements. *Jack v. Clinton*, 259 Neb. 198, 609 N.W.2d 328 (2000); *Farnsworth v. Farnsworth, supra.* In determining the potential that the removal to another jurisdiction holds with respect to the second consideration regarding enhancing the quality of life of the parent seeking removal and of the children, we have previously evaluated several pertinent factors, including: (1) the emotional, physical, and developmental needs of the children; (2) the children's opinion or preference as to where to live; (3) the extent to which the custodial parent's income or employment will be enhanced; (4) the degree to which housing or living conditions would be improved; (5) the existence of educational advantages; (6) the quality of the relationship between the children and each parent; (7) the strength of the children's ties to the present community and extended family there; and (8) the likelihood that allowing or denying the move would antagonize hostilities between the two parties. *Brown v. Brown*, 260 Neb. 954, 621 N.W.2d 70 (2000). We have stated the list of factors should not be misconstrued as setting out a hierarchy, and depending on the circumstances of a particular case, any one factor or combination of factors may be variously weighted. *Id.*

With respect to the first consideration involving the motive of each parent in seeking or opposing the move, from our de novo review, we see no conclusive evidence that either party was seeking to frustrate the custodial rights of the other party or was otherwise acting in bad faith.

With respect to the second consideration regarding the quality of life for the children and the custodial parent, Kimberly presented evidence generally to the effect that the move to the Washington, D.C., area where she could reside with Butler would result in a good quality of life for the children by providing educational, cultural, and recreational activities. The prime motive asserted for removal was to enable Kimberly, the custodial parent, to reside with Butler. Kimberly did not claim that the quality of life factors were the driving force behind her desire for removal, nor was she required to prove that the quality of life elsewhere was superior to that in Nebraska. Bradley presented evidence which focused on the children's ties to their community, their extended family in Nebraska, and the fact that the children had expressed concerns about moving.

The consideration before the district court was whether it would be in the children's best interests to move with Kimberly, who is their custodial parent, or to modify custody in order to allow the children to stay in Nebraska. From the record in this case, we conclude that although there were legitimate reasons for the children to remain in Nebraska, they were not compelling, and the district court could reasonably have found that the move with the custodial parent was in the children's best interests.

The third factor to be considered is the impact such removal will have on contact between the children and the noncustodial parent, when viewed in the light of reasonable visitation arrangements. In the present case, it is clear that the distance between Virginia and Nebraska will diminish the amount of contact available between the children and their noncustodial parent. The district court awarded Bradley liberal visitation and almost the entire summer school break. The visitations are to be facilitated by requiring Kimberly to pay all travel expenses associated with visitation. It appears that the district court attempted to minimize the negative impact removal would have on contact between Bradley and the children.

In sum, our de novo review of the record indicates that the district court did not abuse its discretion in granting Kimberly, the custodial parent, permission to move the children from Nebraska and in denying Bradley's motion to modify custody.

Because we affirm the district court's order denying Bradley's motion to modify custody, we do not consider Bradley's assignment of error which claimed that the district court erred when it failed to order Kimberly to pay child support to Bradley.

### (b) Testimony of Children

In his cross-appeal, Bradley assigns error to the district court's refusal to allow him to call the children as witnesses to testify as to their preferences in regard to custody and removal. Bradley subpoenaed both children to appear and testify on his behalf at trial. Kimberly moved to quash the subpoenas on the basis that it was not in the children's best interests to be required to appear and testify in a case involving their own custody and for the further reason that the children were not identified by Bradley as potential witnesses during discovery.

At trial, the district court determined that it would not allow Bradley to call the children as witnesses, but allowed Bradley to make an offer of proof. Bradley sought to stipulate that the children would testify that they would want to continue living in Nebraska with him rather than moving to Virginia with Kimberly, but Kimberly declined to so stipulate. Ultimately, the parties did stipulate that if called to testify, the children would testify that they would prefer to continue living in Nebraska. Bradley objected to the district court's decision not to allow the children's testimony, and the district court overruled his objection. Bradley made an offer of proof.

In the present case, the children's preferences were relevant because "the children's opinion or preference as to where to live" is one of the factors to be considered in determining whether to allow removal. See *Brown v. Brown*, 260 Neb. 954, 967, 621 N.W.2d 70, 81 (2000). Furthermore, § 42-364(2)(b) provides that in determining custody arrangements, one of the factors the court shall consider is "[t]he desires and wishes of the minor child if of an age of comprehension regardless of chronological age, when such desires and wishes are based on sound reasoning." We have held that while the wishes of a child are not controlling in the determination of custody, if a child is of sufficient age and has expressed an intelligent preference, the child's preference is entitled to consideration. *Miles v. Miles,*

231 Neb. 782, 438 N.W.2d 139 (1989). See, also, *Grace v. Grace*, 221 Neb. 695, 380 N.W.2d 280 (1986); *Boroff v. Boroff*, 197 Neb. 641, 250 N.W.2d 613 (1977). We observe that in those cases where the child's preference was given significant consideration, the child was typically over 10 years old. At the time of the trial in the present case, Brandon was 11 years old and Chelsea was 8 years old.

Children of the parties to a marriage dissolution proceeding are not by that fact alone rendered incompetent as witnesses, but whether it is reversible error to hear their testimony depends upon the circumstances of the case. *Beran v. Beran*, 234 Neb. 296, 450 N.W.2d 688 (1990); *Murdoch v. Murdoch*, 200 Neb. 429, 264 N.W.2d 183 (1978). This court has previously considered a district court's ruling on a parent's request to present children's testimony in a custody proceeding. In *Krohn v. Krohn*, 217 Neb. 158, 347 N.W.2d 869 (1984), the trial court denied the father's request for the court to interview the children, ages 4 and 6, in chambers. We affirmed the trial court's decision for a number of reasons, including the questionable value of such interview unless an adequate record were made and the young and impressionable age of the children entitling their expressions of preference to little if any weight. Moreover, any error in regard to the trial court's denial was waived because the father in *Krohn* made no offer of proof as to what the children were expected to testify.

In *Murdoch v. Murdoch, supra*, the wife called two natural daughters of the husband, ages 13 and 11, as her final witnesses and the trial court declined to hear their testimony. We concluded such refusal was not reversible error because the court had already questioned the two children in the presence of counsel for both parties and such unsworn testimony was in the record. We concluded that additional testimony of the children would not have affected the court's determinations and instead could have had a traumatic and disrupting emotional effect on the children and could have harmed the ultimate custodial arrangement and therefore the best interests of the children.

In *Beran v. Beran, supra*, the mother called the parties' 15-year-old daughter as a witness and the trial court did not allow her to testify. We concluded in *Beran* that the trial court had

erred in its ruling. The mother had made an offer of proof as to the daughter's testimony, and the daughter was not being called to testify regarding her custodial preference but to corroborate her mother's testimony that the mother took care of the family and household duties as best she could when she was home. Such testimony was intended to counteract testimony of various witnesses presented by the father to the effect that the mother was no longer taking care of the family or that her family was no longer a priority to her. In *Beran*, we noted that although courts are rightly wary of placing minor children of a divorce proceeding in the traumatic position of testifying, the trial court should have allowed the daughter's testimony in that case. In *Beran*, the daughter was 15 years old at the time of trial and appeared to have a clear understanding of the proceedings. Her testimony had potential probative value in light of the testimony presented by the father. Although the guardian ad litem had expressed the opinion that the daughter should not testify, we found that such opinion was a broad recommendation and that there was no specific statement as to how the daughter might be detrimentally affected by testifying. We therefore concluded the trial court had committed reversible error in not allowing the daughter to testify for the limited purposes stated.

As a general matter, it has been observed that

[a] child who is a competent witness under the general rules relating to children as witnesses is a competent witness in an action for divorce. . . .

Although calling children to testify against one of their parents in a divorce case is distasteful and should be discouraged, a court may not prohibit a witness from testifying in a divorce case solely because the proposed witness is [a] child of the parties. Strictly speaking, however, if a child of the parties to a divorce action is called as a witness, the court is not warranted in excluding its testimony for reasons other than those warranting its exclusion generally. The rule applies with particular force where the need for calling the child to testify is imperative; public policy and private views of propriety do not justify a refusal to listen to competent testimony of young children where there is a need for such testimony. A divorce court's

unwarranted refusal to permit the parties' minor children to testify may constitute reversible error.

24 Am. Jur. 2d *Divorce and Separation* § 379 at 538 (1998).

In the present case, the district court decided it would not permit the children's testimony because it found that such testimony would be cumulative and that it was not in the children's best interests to be required to testify. The parties had stipulated to the children's preferences, and the children's guardian ad litem had testified.

With respect to the move, the guardian ad litem testified that the children "had indicated that if they moved they would miss their father a great deal as well as — they're age appropriately nervous about the idea of going to a new school and leaving friends." She further testified that Brandon was "worried" about the prospect of moving and that "he's indicated that he doesn't want to lose his friends, his family contacts. He'd miss his dad." The guardian ad litem's report states that "[b]oth children indicated that, if they moved to D.C., they would miss their father greatly. They also expressed some concerns regarding leaving friends and starting new schools." In her testimony, the guardian ad litem concluded, nevertheless, that "the children appear to be pretty well-adjusted and could handle a move." With respect to the children's testifying, the guardian ad litem recommended in her report that "[d]ue to these children's young ages and their loyalty bonds to both parents, [she] would strongly object to any effort to have these children testify in court."

We conclude that the district court's decision not to permit the children to testify in the present case was not reversible error. The testimony would have been cumulative because, inter alia, the parties stipulated that the children would prefer to stay in Nebraska. Accordingly, the district court was able to consider the factor of the children's preferences in determining whether removal should be permitted, and thus we cannot say that the district court failed to consider their preferences. In light of the record and the valid concerns connected with requiring these young children to testify regarding their custody in a dispute between the parents, the district court did not commit reversible error in disallowing their testimony.

## VI. CONCLUSION

We conclude that the district court abused its discretion when it assumed legal custody of the children and when it entered conditional orders. We conclude that Kimberly's remaining assignments of error and Bradley's assignments of error on cross-appeal are without merit.

The district court's order in which it assumed legal custody of the children is reversed, and we remand the cause to the district court with directions to enter an order returning legal custody of the children to Kimberly. Paragraphs 2C and 2E of the district court's October 2, 2000, order, in which it made conditional orders, are void, and we vacate those portions of the order. We affirm the district court's order in all other respects.

AFFIRMED IN PART, REVERSED AND REMANDED
IN PART, AND IN PART VACATED.

McCORMACK, J., participating on briefs.

CONNOLLY, J., dissenting.

The majority opinion concludes that the district court implicitly found that removal was in the best interests of the children because it granted Kimberly Vogel permission to remove the children from the state. This is a generous interpretation. Rather than determining that the relocation was in the children's best interests, the trial court found that removal was an insufficient ground for a change in custody and denied Bradley Vogel's application for a modification of the decree. It then summarily granted Kimberly's request for removal. Neither in its order nor in comments from the bench did the court make any findings regarding the children's best interests.

Trial and appellate courts, in parental relocation cases, deal with the tension created by a mobile society and the problems associated with uprooting children from stable environments. As we stated in *Farnsworth v. Farnsworth*, 257 Neb. 242, 248, 597 N.W.2d 592, 597 (1999), these cases are "among the most complicated and troubling" disputes that courts are asked to resolve. The purpose of multifactor tests is to help courts that must struggle with these difficult issues by pointing out the relevant considerations. Because of the nature of the problem, no test can be perfect. But unless a trial court undertakes to analyze these considerations, its judgment is rendered in a vacuum.

Because the trial court failed to follow the applicable law as set out in *Farnsworth*, I conclude that it was an abuse of discretion to allow Kimberly to relocate the children to Virginia.

Whether a custodial parent should be allowed to remove his or her child from the state is a separate question from whether a change in custody is warranted. There is no presumption favoring or disfavoring relocation. See Neb. Rev. Stat. §§ 42-364(1) and (2) and 43-2902 (Reissue 1998). Rather, when a custodial parent has a legitimate reason to move, the issue must be decided on the children's best interests. *Id.* The trial court's order, apparently premised upon whether a change in custody was justified, failed to properly analyze whether the relocation was in the children's best interests. Reviewing the record de novo, I conclude that it was not. Accordingly, I dissent.

## I. RELOCATION ANALYSIS

There are three broad considerations for determining whether removal to another jurisdiction is in a child's best interests: (1) each parent's motives for seeking or opposing the move; (2) the potential that the move holds for enhancing the quality of life for the child and the custodial parent; and (3) the impact such a move will have on contact between the child and the noncustodial parent, when viewed in the light of reasonable visitation arrangements. *Brown v. Brown*, 260 Neb. 954, 621 N.W.2d 70 (2000).

### 1. PARENTS' MOTIVES

I agree that Kimberly has not sought to frustrate Bradley's custodial rights or otherwise acted in bad faith or frivolously. But her desire to reside in Virginia with her husband, Kent Butler, is equally balanced by Bradley's legitimate concerns about the effects a relocation of over 1,000 miles will have on his relationship with his children. See *Kalkowski v. Kalkowski*, 258 Neb. 1035, 607 N.W.2d 517 (2000). It is the second and third considerations in the best interests analysis which weigh against relocation.

### 2. QUALITY OF LIFE FACTORS

In *Farnsworth*, we set out a number of factors to "assist trial courts in assessing the second consideration regarding the potential for enhancing the quality of life for the child and the custodial parent." 257 Neb. at 250, 597 N.W.2d at 598. We further

stated that courts were not required to give one factor more weight than any other factor in a given case. *Id.* But that statement should not be construed as authorizing courts to disregard any factor.

In determining the quality of life potential for the relocating parent and children, the following factors are pertinent: (1) the emotional, physical, and developmental needs of the children; (2) the children's opinion or preference as to where to live; (3) the extent to which the relocating parent's income or employment will be enhanced; (4) the degree to which housing or living conditions would be improved; (5) the existence of educational advantages; (6) the quality of the relationship between the children and each parent; (7) the strength of the children's ties to the present community and extended family there; and (8) the likelihood that allowing or denying the move would antagonize hostilities between the two parties. *Brown, supra.*

The majority states that Kimberly presented evidence that the move to the Washington, D.C., area would result in a good quality of life for the children by providing educational, cultural, and recreational activities. The majority opinion further states that Kimberly was not required to prove that the quality of life elsewhere was superior to that in Nebraska. I disagree. The factors we set out in *Farnsworth v. Farnsworth*, 257 Neb. 242, 250, 597 N.W.2d 592, 598 (1999), were specifically intended to "assist trial courts in assessing . . . the potential for *enhancing* the quality of life." (Emphasis supplied.) To "enhance" is to "raise to a higher degree; [or] intensify." Webster's Encyclopedic Unabridged Dictionary of the English Language 474 (1989). Therefore, in order to have the quality of life consideration weighed in her favor, Kimberly had to show that the relocation would improve the quality of life for the children and herself when all eight factors are considered as a whole. Although educational, cultural, and recreational activities are not the only factors that a court may consider, Kimberly has failed to demonstrate that their quality of life would be enhanced by the move.

(a) Existence of Educational Advantages

Kimberly stated that she and Butler wished to find a home in Fairfax, Virginia, because she believed that the city has a good

school system. She stated that she had seen the curricula for the schools, but she did not present any evidence to show that the Fairfax schools were superior to the children's current school. In *Farnsworth*, we stated that generalized research is not compelling in determining whether one school system is superior to a Nebraska school system. This factor weighs neither for nor against the relocation. See *id*. See, also, *Brown, supra*.

### (b) Improvement of Housing or Living Conditions

#### (i) Living Conditions

Kimberly testified that she and the children had enjoyed many recreational activities together while in Papillion. The children were also involved in organized sports, dance, and other activities. She stated that, if allowed to move, the children would be close to the ocean, historical sites, and museums. But she did not claim that these opportunities were superior to those available in Nebraska. Rather, the statements were made to support her contention that the recreational and cultural opportunities were not inferior to those available in Nebraska.

We have specifically stated that "the dispositive question is not where the children will have more fun, but where the living conditions will further their best interests. Simply put, the considerations one includes when choosing a vacation destination are not necessarily the same as those included when deciding where to raise a child." *Brown v. Brown*, 260 Neb. 954, 969-70, 621 N.W.2d 70, 82 (2000). Based on the record, cultural and entertainment opportunities do not show that the Washington, D.C., area is a preferable place to live. See *id*.

Furthermore, because Kimberly had not obtained employment or housing at the time of the hearing, she was unable to say what the children's schedule or childcare needs would be before or after school. She stated that Butler would be able to pick the children up from school on the days that he worked until 2 p.m., but she admitted that he sometimes worked until 6 p.m. and that she was uncertain what the commute time would be for either herself or Butler. In contrast, the children's neighborhood school in Papillion provided before-and-after-school daycare, and Kimberly was able to rely on Bradley's parents to care for the children when they were sick.

 

### *(ii) Housing*

Kimberly testified that comparable housing was available but would cost approximately $500 to $600 per month more than in Nebraska. Under similar facts, we have held that the fourth factor did not weigh for or against relocation and did not factor into our de novo review. See *id.*

### (c) Strength of Children's Ties to Present Community and Extended Family

The majority opinion states that Bradley presented evidence which focused on the children's ties to their community, their extended family in Nebraska, and the fact that the children had expressed concerns about moving. The majority concludes that while there were legitimate reasons for the children to remain in Nebraska, they were not compelling. I disagree.

Bradley testified that the children are very close to his parents and extended family. He usually stopped to visit his parents with the children when he had custody, and the children were with his extended family every holiday. Bradley's mother testified that she saw the children once or twice a week and on every holiday and special occasion and that the children called her at least once a week. Two other witnesses also testified to the children's close relationship with Bradley's parents. Brandon's cousin was also his best friend. Finally, Chelsea and Brandon, who were in the fourth and sixth grades, respectively, at the time of this hearing, had attended the same school in Papillion all of their lives.

In contrast, the children do not have extended family in Virginia or the stability that comes from the long-established social relationships in their school and community. Given the strength of the family and community ties in Nebraska, this factor weighs against relocation.

### (d) Children's Opinions or Preferences as to Where to Live

The parties stipulated that if the children were allowed to testify, they would say that they preferred to continue living in Papillion. Although a child's wishes are not controlling, they are relevant and weigh against removal in this case. See *Marez v. Marez*, 217 Neb. 615, 350 N.W.2d 531 (1984) (affirming district court's denial of motion for removal to Colorado in which court strongly considered children's statements made during in camera

interview; children, ages 11, 10, and 9, wished to remain with family and friends in Nebraska).

A child's preference should be given consideration by the court in acting upon a motion for modification of custody when (1) the issue is whether the child will be moved from the community where the child has lived for most of his or her life; (2) an excellent parent who remains in that community wishes to have the child reside with him or her, and (3) the child, for valid reasons, has expressed a preference to remain in the community. *In re Marriage of Rosson*, 178 Cal. App. 3d 1094, 224 Cal. Rptr. 250 (1986), *disapproved on other grounds, In re Marriage of Burgess*, 13 Cal. 4th 25, 913 P.2d 473, 51 Cal. Rptr. 2d 444 (1996).

The children's desires to remain close to the family and friends they had known all their lives were valid reasons for preferring to remain in Nebraska with Bradley. See *Marez, supra*. Further, the children had extensive interactions with both parents and had lived with the custody arrangement for 3 years at the time of this modification hearing. Their preferences should have been given consideration by the court.

I find the support of this extended family and the strength of the children's desires to remain near this family compelling reasons for the children to remain in Nebraska. Moreover, I cannot conclude that the remaining factors weigh in favor of relocation.

### (e) Emotional, Physical, and Developmental Needs of Children

The guardian ad litem's interviews indicated that the children were very loyal to both parents, and she believed it would be in their best interests to have "good contact with both parents on an immediate and frequent basis." Given that Kimberly intended to move, however, she believed that it would be in the children's best interests to remain with Kimberly and Butler.

A court should consider that a custodial parent's remarriage can sometimes strengthen and stabilize a postdivorce family unit. See *Tropea v. Tropea*, 87 N.Y.2d 727, 665 N.E.2d 145, 642 N.Y.S.2d 575 (1996). The guardian ad litem, however, admitted that she had never met Butler, and Kimberly presented no evidence concerning the children's relationship with him. In addition, Kimberly testified that Butler's assignment at the Pentagon

would last only a little over a year and that he had no control over where he would be assigned after that period.

There was also a question as to the emotional effect the move would have on Brandon. Bradley testified that Brandon had told his cousin he would kill himself if he were forced to move. The guardian ad litem did not believe Brandon would act in a harmful manner if he moved, based on Brandon's counselor's reports. She admitted, however, that she had not followed up on Bradley's concerns about Brandon and that she had only briefly interviewed Brandon. She also testified that Brandon's counselor had reported that Brandon was mildly depressed. She believed that the move—especially to a location over 1,000 miles away—could exacerbate Brandon's depression whether he moved with Kimberly or stayed with Bradley because the move would make close contact with both parents impossible.

At best, the guardian ad litem was able to say that the children were well-adjusted enough to "handle" a move. But given the guardian ad litem's concerns that the children should have close contact with both parents and that the move could heighten Brandon's depression and the possibility of future transfers for Butler, the evidence failed to show that the relocation would enhance the children's emotional, physical, and developmental needs.

### (f) Enhancement of Custodial Parent's Income or Employment

Kimberly testified that she had received no replies to her job applications to manage apartment rental property. Although she believed her income would be approximately $8,000 more annually than what she earned in Nebraska, she admitted that her estimate might not be accurate. She stated that she believed the standard of living for herself and her children would be improved by combining her household with Butler's household, but the record does not show Butler's income. Further, the evidence showed that any assumed increase in her income would be at least partially offset by increases in housing costs of approximately $500 to $600 per month. On this record, Kimberly did not show that her income or employment would be enhanced. Compare *Jack v. Clinton*, 259 Neb. 198, 609 N.W.2d 328 (2000) (Stephan, J., concurring in result).

### (g) Quality of Relationship Between
### Children and Each Parent

The record shows that both Bradley and Kimberly have a close, nurturing relationship with their children. The guardian ad litem's report and testimony indicated that the children are bonded to both parents and experience positive interactions with each. Kimberly admitted that Bradley had custody of the children more than the time ordered in the decree of dissolution. Although Kimberly testified that Bradley had not taken full advantage of his extended summer visitation, she also stated that she had asked him to pick the children up from daycare when she had scheduling conflicts or needed him to babysit for her.

Bradley submitted a calendar on which he had kept track of the dates he had custody for evenings or overnight visitations. Some of the evenings he had custody were only from 5 p.m., after daycare, until between 8 and 9 p.m., but the evidence showed that he had overnight visitation with his children an average of seven nights per month and had some type of visitation with his children an average of 3½ days out of every week. He also frequently called his children on the days he did not have visitation. In addition, the children attended regular, extended family gatherings at his parents' home. While the children's move to Virginia sustains Kimberly's relationship with the children, its effect on their relationship with Bradley is devastating because the distance involved will make frequent contact impossible.

### (h) Summary—Quality of Life

"Under Nebraska law, the burden has been placed on the custodial parent to satisfy the court that he or she has a legitimate reason for leaving the state and to demonstrate that it is in the child's best interests to continue living with him or her." *Brown v. Brown*, 260 Neb. 954, 965, 621 N.W.2d 70, 80 (2000). In affirming this relocation, the majority opinion has relied on Kimberly's evidence that the move to the Washington, D.C., area would enhance the quality of life for the children by providing educational, cultural, and recreational activities. But, in other cases, we have found that similar evidence failed to demonstrate that a relocation would enhance the child's quality

of life. See, *id.*; *Farnsworth v. Farnsworth*, 257 Neb. 242, 597 N.W.2d 592 (1999).

Conversely, the majority has ignored the children's desires to remain in Nebraska where they have a close relationship with Bradley and strong ties to their extended family and community. As to the remaining factors, the evidence was inconclusive at best and required this court to speculate that the children's quality of life would be enhanced. Preserving the custodial relationship should not always come at the cost of a child's bond with a dedicated noncustodial parent. Because Kimberly has failed to carry her burden of proof that the relocation will enhance the quality of life for the children and herself, the issue should turn on the impact of the move on the contact between Bradley and the children. See *Kalkowski v. Kalkowski*, 258 Neb. 1035, 607 N.W.2d 517 (2000).

### 3. IMPACT OF MOVE ON CONTACT BETWEEN BRADLEY AND CHILDREN

The final consideration is the impact of the relocation on Bradley's ability to maintain a meaningful relationship with his children. See *Brown, supra*. The relocation to the Washington, D.C., area is over 1,000 miles from Bradley's home. It will dramatically affect Bradley's contact with his children and make it impossible for him to maintain the relationship that he had enjoyed. The distance, expense, and time involved in such travel are appropriately considered in evaluating the degree to which the move would affect Bradley's contact and relationship with his children. See *id*. Although Kimberly has been ordered to pay for the children to visit Bradley in the summer and specified school holidays, the evidence showed that Bradley had extensive physical custody of the children and contacted them by telephone on the days he did not see them. Summer and holiday vacations will not compensate him or the children for this daily interaction.

In addition, Bradley petitioned for custody in this case. A noncustodial parent's interest in securing custody as well as the feasibility of a change in custody are factors to be considered in assessing the impact of a move on the noncustodial parent relationship. See *Farnsworth, supra*. The evidence showed that the children's relationship with Bradley was very close, that they in

fact wished to remain with Bradley, and that their ties to the extended family and community were strong. Both Bradley and the children would have considerable support from his parents and stability from their existing relationships within their community. Bradley's mother stated that she and Bradley's father had provided childcare in the past and could continue to do so whenever needed. Thus, transferring custody to Bradley was a realistic alternative to relocating the children to Virginia.

#### 4. BEST INTERESTS OF CHILDREN

As noted, the district court failed to make any findings to indicate that the relocation would be in the children's best interests. But the court did state that based on evidence from the guardian ad litem, it had concerns about the effect the move would have on the children as well as the effects of Butler's future assignments and transfers. Nevertheless, the trial court ignored these concerns and permitted the relocation.

### II. CONCLUSION

Reviewing the record de novo, I conclude that the evidence failed to show that the quality of life for these children would be enhanced by the relocation and that any speculation on this issue was significantly outweighed by the detrimental effects the move would have on the children's relationship with Bradley. I would reverse the decision of the district court allowing the removal of the children.

McCormack, J., joins in this dissent.