IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

WELCH V. WELCH

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

DONALD L. WELCH, APPELLANT,

V.

HEATHER L. WELCH, APPELLEE.

Filed April 28, 2015.    No. A-14-921.

Appeal from the District Court for Frontier County: DAVID URBOM, Judge. Affirmed.

Kent A. Schroeder, of Ross, Schroeder & George, L.L.C., for appellant.

James R. Korth, of Reynolds, Korth & Samuelson, P.C., L.L.O., for appellee.

MOORE, Chief Judge, and PIRTLE and BISHOP, Judges.

MOORE, Chief Judge.

Donald (Donnie) Welch appeals from an order of the district court for Frontier County which denied his request to modify child custody. Donnie's principal contention on appeal is that the district court should have applied the removal analysis found in *Farnsworth v. Farnsworth*, 257 Neb. 242, 597 N.W.2d 592 (1999), to Heather Welch's intrastate move with the parties' minor children from Curtis to Scottsbluff. He asserts the distance involved in such a move necessitates a more thorough analysis than what the ordinary modification criteria requires. Donnie also contends the district court erred when it modified his parenting time and denied his motion to alter or amend. For the reasons set forth below, we find the district court did not abuse its discretion and we affirm.

FACTUAL BACKGROUND

Donnie and Heather were married on June 9, 2007, in Rapid City, South Dakota. Two children were born during their marriage, Tristin, born in April 2008, and Jayden, born in December 2009. Donnie and Heather were divorced pursuant to a decree of dissolution entered

September 9, 2013. Heather received sole legal and physical custody of the children. Donnie was awarded parenting time consisting of every Wednesday evening from 6:00 p.m. to 9:00 p.m. and every other weekend from 6:00 p.m. on Friday through 6:00 p.m. on Sunday. Donnie also received specified parenting time on holidays and 6 weeks of parenting time during the summer, which would generally consist of three separate 2-week periods. At the time of the decree, both Heather and Donnie were living in Curtis, Nebraska.

Within the decree of dissolution, the district court also denied Heather's application to move with Tristin and Jayden to Rapid City, South Dakota. The court found that Heather's desire to go to South Dakota to be closer to her family and obtain a higher income did not constitute a legitimate reason for removal. Neither party appealed from the decree of dissolution.

On November 3, within 2 months of the entry of the decree, Heather moved with the children from Curtis to Scottsbluff. To inform Donnie of the move, Heather mailed him a certified letter on October 29. Within this letter, Heather informed Donnie of her new address in Scottsbluff and she offered to work with Donnie to make up for the parenting time on Wednesday nights that he would no longer be able to exercise because of the substantial travel involved.

In response to Heather's move, Donnie filed a complaint for modification of the decree on November 22, 2013. He alleged that Heather's move from the immediate geographic location hinders his visitation and is detrimental to his maintaining a meaningful relationship with the children. Donnie further alleged that Heather's move was not reasonably foreseeable at the time of trial and constituted a material change in circumstances. He stated that it would be in the children's best interests for him to be awarded physical custody. Alternatively, Donnie requested that the parenting plan be revised because the visitation schedule was no longer feasible due to the distance between his home in Curtis and Heather's apartment in Scottsbluff.

The district court held a trial on Donnie's complaint to modify on July 21, 2014. Since his divorce from Heather, Donnie has remarried and lives with his current wife Tonya and her 5-year-old son from another marriage. Tonya is a music teacher at Maywood Public Schools. Donnie and Tonya live in a 5-bedroom home in Curtis, allowing Tristin and Jayden to have their own rooms when they visit. Donnie farms 800 acres of mostly irrigated land, but is no longer involved in the family farm business due to a falling out with his family after his divorce from Heather.

Donnie testified that he has exercised all of his parenting time, except for Wednesday nights, since Heather moved with the girls to Scottsbluff. To exercise his parenting time, Donnie drives from Curtis to Scottsbluff to pick up the girls and then returns home. Heather drives to Curtis at the end of Donnie's parenting time to retrieve the girls. The parties agree that a car ride from Scottsbluff to Curtis is approximately 4 hours. In addition to his scheduled time, Donnie made trips to Scottsbluff to attend Tristin's birthday, a spring music program, and parent-teacher conferences. Heather also permitted Donnie to exercise extra parenting time at the end of December and in March. Donnie admitted that he did not always exercise his Wednesday parenting time while Heather and the girls remained in Curtis, but explained that the times he missed were due to having to work during harvest season. Donnie also testified that he understood Heather would possibly move away from Curtis following the divorce, but he envisioned that she would move to a town closer to Curtis such as North Platte or Ogallala.

Donnie testified that he was seeking to be awarded primary physical custody of Tristin and Jayden. However, if the court determined that custody should not be modified, he proposed that he receive additional parenting time; namely, two additional weeks of parenting time in the summer.

During her testimony, Heather explained her decision to move from Curtis to Scottsbluff. She testified that she chose Scottsbluff after looking at a number of other locations in Nebraska including McCook, North Platte, Alliance, and Chadron. According to Heather, Scottsbluff was the most desirable location because of its proximity to her family in Rapid City, its larger population with more jobs and better pay, and more available activities for Tristin and Jayden. Heather denied that she made her decision to move to Scottsbluff in order to punish Donnie.

Since moving to Scottsbluff, Heather has obtained a job working as a WIC clerk for the Community Action Partnership of Western Nebraska. WIC is a supplemental food program for women, infants, and children. In this position, Heather earns $9.35 per hour and works approximately 25 to 32 hours a week. Through this job, Heather is also eligible for vision, dental, and 401(k) benefits. While she lived in Curtis, Heather earned $7.25 per hour working at a local grocery store. Heather did not receive any benefits from her position at the grocery store. Although Heather is employed and earning a higher hourly wage than she did in Curtis, she still receives public assistance in the form of food stamps, WIC, and assistance for child care. Tristin and Jayden are also on Medicaid through Kids Connection.

Heather and the children live in an apartment that is part of a low income housing complex in Scottsbluff. Heather's apartment is a 2-bedroom, 1-bathroom unit and Tristin and Jayden share a bedroom. Photographs of the complex and Heather's particular apartment were admitted into evidence at trial and show that the area is well-maintained. Heather testified there are nearby parks and playgrounds at which the girls play.

During the day while Heather is working, Tristin attends kindergarten classes and Jayden attends daycare. Tristin's report card was entered into evidence and it reflects that she is progressing well at this stage of her education. In fact, Tristin has received an award for academic excellence.

Donnie and Heather presented conflicting evidence on the effect of the move upon Tristin and Jayden. Donnie contended that Heather is not providing proper care for the girls because Tristin and Jayden arrive at his home with severe body odor. Additionally, Donnie presented testimony from a local doctor who had examined Jayden for issues with her tonsils and problems with snoring and her hearing. The doctor recommended that Jayden see an ENT doctor for further evaluation. Donnie and Tonya also took Jayden for a counseling appointment after they noticed behavior problems and believed that she had difficulty adjusting to the divorce. Since that appointment, Donnie believes Jayden's behavior has improved.

Heather disputed much of Donnie's evidence. She believed the girls had adjusted well to Scottsbluff and testified that both had made new friends at school and daycare. During the summer, Heather had enrolled them in a reading program at the library and they had gone to a movie in the park and to a local swimming pool. Heather also testified that there were a number of upcoming activities in the fall for the girls. Heather and her mother both testified that the girls are regularly bathed during Heather's parenting time and do not have body odor. Finally, Heather stated that

she had taken both girls to a doctor in Scottsbluff who had examined the girls and found no serious issues. This doctor is aware of Jayden's tonsil issues. Heather testified that she is following whatever plan of care her doctor recommends for the girls. Heather further stated that as the custodial parent she does not want Donnie to make medical decisions during his parenting time without first consulting her.

The court filed its order on August 21, 2014, denying Donnie's request to modify custody. The court rejected Donnie's arguments that it should apply the factors set forth in *Farnsworth v. Farnsworth*, 257 Neb. 242, 597 N.W.2d 592 (1999), for removal of a minor child to another state. In reaching this conclusion, the district court cited an unreported opinion from this court in which we rejected the use of the *Farnsworth* factors for intrastate relocations. Then, the court concluded Donnie did not show a material change in circumstances, stating Heather's move from Curtis to a place closer to her family was foreseeable. The court also found that the minor children's best interests required that they remain in Heather's custody.

Although the court denied Donnie's request to modify custody, it found the distance between the parties necessitated changes to the parenting plan. The court modified Donnie's parenting time to include one additional week of summer parenting time to make up for the Wednesday night parenting time which was no longer feasible. Now, Donnie has 7 weeks of parenting time during the summer, consisting of one 3-week period followed by two 2-week periods. The court ordered each of Donnie's periods of summer parenting time to be separated by at least 2 weeks of Heather's parenting time.

Following the district court's order, Donnie filed a motion to alter or amend. He requested the court to add a provision to the order which granted him additional visitation during extended weekends and other breaks from the children's school schedule. Donnie's motion also requested a provision in the order which would have required Heather to meet him in Ogallala to exchange the children at the commencement and conclusion of his parenting time. The district court overruled the motion. Donnie has timely appealed.

## ASSIGNMENTS OF ERROR

Donnie contends the district court erred when it declined to modify the physical custody of the minor children and only awarded him with one extra week of visitation during the summer. Finally, Donnie argues the district court should have granted his motion to alter or amend the August 21, 2014 order.

## STANDARD OF REVIEW

Child custody determinations, and visitation determinations, are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Vogel v. Vogel*, 262 Neb. 1030, 637 N.W.2d 611 (2002).

An abuse of discretion occurs when a trial court bases its decisions upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Schrag v. Spear*, 290 Neb. 98, 858 N.W.2d 865 (2015). A judicial abuse of discretion

requires that the reasons or rulings of the trial court be clearly untenable insofar as they unfairly deprive a litigant of a substantial right and a just result. *Id*.

ANALYSIS

*Child Custody*.

Donnie devotes much of his brief to arguing that the district court should have applied the removal factors found in *Farnsworth v. Farnsworth*, 257 Neb. 242, 597 N.W.2d 592 (1999), to the present case. Referring this court to a number of decisions from other jurisdictions, Donnie contends that the substantial distance involved in Heather's move, although within Nebraska's borders, necessitates applying the relocation criteria from *Farnsworth*. Donnie applies the *Farnsworth* criteria to Heather's move to Scottsbluff and concludes that there is little evidence that weighs in favor of permitting Heather to move the children to Scottsbluff.

In replying to Donnie's argument regarding the application of *Farnsworth* to the present case, Heather observes that the *Farnsworth* analysis has never been applied to an intrastate relocation. Therefore, she maintains that the customary principles for custody modification should be applied in this case. Nonetheless, Heather believes that application of the *Farnsworth* factors in this case would not have changed the outcome.

This court's recent opinion in *Bohnet v. Bohnet*, 22 Neb. App. 846, ___ N.W.2d ___ (2015), squarely addresses application of the *Farnsworth* analysis to a long-distance intrastate move by the custodial parent. In *Bohnet*, this court considered a factual scenario in which a custodial father moved from Lincoln, Nebraska, to South Sioux City, Nebraska in order to accept a teaching position following his college graduation. The child's mother also attended college in Lincoln and was scheduled to graduate the following year. The distance between Lincoln and South Sioux City is 148 miles. Before the father's move to South Sioux City, the parties had been following a parenting plan which gave the mother parenting time every other Thursday afternoon to the following Monday morning, and during the "off" weeks, parenting time from Thursday afternoon until Friday morning. The parties had also agreed to alternate weeks of parenting time during the summers.

The mother filed a complaint for modification in which she alleged the father's move to South Sioux City was a material change in circumstances. She contended this move would make it impossible for her to exercise the parenting time she had been allotted in the decree. She also requested custody of the minor child. The district court found that a material and substantial change in circumstances existed, but awarded physical custody to the father. The court modified the parenting plan to allow the mother parenting time every other weekend from Friday evening until Sunday evening. The mother appealed, arguing that the district court abused its discretion by awarding physical custody to the father without applying the *Farnsworth* removal factors to determine if the move to South Sioux City was in the child's best interest.

We declined to apply the *Farnsworth* factors in *Bohnet*. In explaining this decision, we stated:

> [W]hile some long-distance intrastate moves might benefit from a thorough *Farnsworth* analysis when considering custody and parenting time issues within the state, neither our Supreme Court nor the Legislature has made that the current state of the law, and therefore,

we continue to decline to require the application of the *Farnsworth* analysis to intrastate moves . . . .

*Id.* at 854, ___ N.W.2d at ___. Thereafter, we applied the propositions of law which are generally found in custody modification cases and determined the district court did not abuse its discretion in awarding physical custody of the minor child to the father.

Consistent with our decision in *Bohnet*, we decline to apply the *Farnsworth* removal analysis to Heather's intrastate move. We are mindful that Heather's move in this case from Curtis to Scottsbluff involves a greater distance than that considered in *Bohnet*. Nevertheless, we conclude that the traditional custody analysis should be applied in this case.

Ordinarily, custody of a minor child will not be modified unless there has been a material change of circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. *Vogel v. Vogel*, 262 Neb. 1030, 637 N.W.2d 611 (2002). The party seeking modification of child custody bears the burden of showing such a change in circumstances. *Id.* A material change in circumstances means the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently. *Tremain v. Tremain*, 264 Neb. 328, 646 N.W.2d 661 (2002). Whether considering a modification of custody or a proposed removal from the state, the best interests of the children are the paramount considerations in a court's determination. See *Brown v. Brown*, 260 Neb. 954, 621 N.W.2d 70 (2000).

According to Neb. Rev. Stat. § 43-2923(1) (Cum. Supp. 2012), the best interests of the child require a parenting arrangement which provides for a child's safety, emotional growth, health, stability, and physical care and regular and continuous school attendance and progress. *Donscheski v. Donscheski*, 17 Neb. App. 807, 771 N.W.2d 213 (2009). Section 43-2923(6) states:

> In determining custody and parenting arrangements, the court shall consider the best interests of the minor child, which shall include, but not be limited to, consideration of the foregoing factors and:
>
> (a) The relationship of the minor child to each parent prior to the commencement of the action or any subsequent hearing;
>
> (b) The desires and wishes of the minor child, if of an age of comprehension but regardless of chronological age, when such desires and wishes are based on sound reasoning;
>
> (c) The general health, welfare, and social behavior of the minor child;
>
> (d) Credible evidence of abuse inflicted on any family member and
>
> (e) Credible evidence of child abuse or neglect or domestic intimate partner abuse.

In addition to the above factors, the Nebraska Supreme Court has held that in determining a child's best interests, courts may consider factors such as general considerations of moral fitness of the child's parents, including the parents' sexual conduct; respective environments offered by each parent; the emotional relationship between child and parents; the age, sex, and health of the child and parents; the effect on the child as the result of continuing or disrupting an existing relationship; the attitude and stability of each parent's character; parental capacity to provide

physical care and satisfy educational needs of the child; the child's preferential desire regarding custody if the child is of sufficient age of comprehension regardless of chronological age, and when such child's preference for custody is based on sound reasons; and the general health, welfare, and social behavior of the child. See *Davidson v. Davidson*, 254 Neb. 357, 576 N.W.2d 779 (1998).

We assume for the sake of argument that Heather's move with the children to Scottsbluff constitutes a material change in circumstances for custody purposes. Even after making that assumption, however, we still cannot say that the district court abused its discretion in leaving custody with Heather as it had recently ordered in the decree of dissolution. From the little evidence presented at trial regarding the girls after the divorce, we find nothing to show that Tristin and Jayden have not been properly cared for and have not adapted well to the move to Scottsbluff. Similarly, there is no evidence in the record to establish that Heather is unfit as a parent. In our de novo review, we find the record supports the finding that the best interests of the children are served by being placed in Heather's custody. This assignment of error is without merit.

*Donnie's Parenting Time*.

Donnie also contends the district court erred when it modified the parenting time schedule. By his calculations, the district court awarded him one additional week in the summer after multiplying the 3 hours of weekly Wednesday evening visitation he was awarded in the decree by 52 weeks and then dividing that product by 24 hours. After performing those calculations, Donnie would be entitled to 6.5 additional days of parenting time; the court rounded the 6.5 days to an additional week. Although Donnie testified at trial that he desires to have 8 weeks of parenting time in the summer, he now argues he is entitled to the entire summer with the children. He proposes that his summer parenting time commence on the first Sunday following the last day of the school year and end on the last Sunday before the beginning of the new school year.

Visitation rights established by a marital dissolution decree may be modified upon a showing of a material change of circumstances affecting the best interests of the children. *Fine v. Fine*, 261 Neb. 836, 626 N.W.2d 526 (2001); *Mark J. v. Darla B.*, 21 Neb. App. 770, 842 N.W.2d 832 (2014). A material change in circumstances means the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently. *Mark J. v. Darla B.*, *supra*. The party seeking to modify visitation has the burden to show a material change in circumstances affecting the best interests of the child. *Id*.

Visitation relates to continuing and fostering the normal parental relationship of the noncustodial parent with the minor children of a marriage which has been legally dissolved. *Id*. The best interests of the children are primary and paramount considerations in determining and modifying visitation rights. *Id*.

We agree with the district court that Heather's move to Scottsbluff constituted a material change in circumstances for purposes of the parties' parenting time. However, reviewing the record de novo for an abuse of discretion, we find no error in the court's order awarding Donnie one additional week of summer parenting time despite his requests for more summer parenting time.

*Motion to Alter or Amend.*

Finally, Donnie argues the district court erred in overruling his motion to alter or amend. As noted above, Donnie moved to alter or amend the modification order to add a provision regarding additional parenting time during the children's school breaks and extended weekends and to establish a neutral point for visitation exchange. Donnie proposed the visitation exchanges take place in Ogallala. Following a hearing, the district court overruled the motion in a written order.

We find no error in the district court's decision to overrule Donnie's motion. There was no evidence presented at trial as to these issues even though Donnie clearly stated that he sought modification of the parties' parenting time in the event he did not receive primary custody. Because Donnie had the opportunity to present evidence on these issues at trial, but failed to do so, the district court did not err in overruling the motion.

## CONCLUSION

We affirm the district court's order modifying the decree of dissolution.

AFFIRMED.