IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

JONES V. SELLERS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JOSHUA H. JONES, APPELLEE,
V.
JESSICA L. SELLERS, NOW KNOWN AS JESSICA L. CARVER, APPELLANT.

Filed September 30, 2014.    No. A-13-640.

Appeal from the District Court for Douglas County: MARLON A. POLK, Judge. Affirmed.

Jessica L. Sellers, pro se.

Kelly T. Shattuck, of Vacanti Shattuck, for appellee.

INBODY, Chief Judge, and RIEDMANN and BISHOP, Judges.

RIEDMANN, Judge.

INTRODUCTION

Joshua H. Jones (Joshua) and Jessica L. Sellers, now known as Jessica L. Carver (Jessica), are the parents of a minor child. Jessica appeals from the order of the district court for Douglas County that modified the original paternity order and parenting plan. On appeal, Jessica challenges the district court's decisions with respect to parenting time, health insurance coverage for the minor child, and child support. Finding no merit to Jessica's arguments, we affirm.

BACKGROUND

Jessica and Joshua's child was born in 2010. A judgment of paternity and parenting plan were originally entered on February 7, 2011. The parties received joint legal custody, and physical custody was awarded to Jessica, subject to Joshua's parenting time. Joshua was ordered to pay child support and maintain health insurance on the child.

On March 9, 2012, Jessica filed a complaint to modify the paternity order and parenting plan. She alleged that a material change of circumstances had occurred since entry of the original order and plan, namely, that Joshua became unemployed. Accordingly, Jessica requested that the

- 1 -

court require that she provide health insurance for the minor child; modify and specify Joshua's parenting time, since he no longer had "days off" as contemplated by the original plan; and modify child support. Joshua filed an answer and counterclaim generally denying Jessica's allegations and asking that the court award the parties joint physical custody.

By the time the modification trial was held on January 15, 2013, Joshua had secured new employment and was working Thursdays through Mondays from 3 to 11 p.m. Health insurance for the minor child was available through Joshua's new employer, and an exhibit was received into evidence showing the various insurance plan options and corresponding costs.

After trial, the court entered an order finding that no material change in circumstances had occurred that would support modification of legal or physical custody. However, the court determined that a material change in circumstances had occurred with respect to Joshua's employment, income, and circumstances and that it was in the child's best interests to modify the parenting plan to maximize each parent's time with the child. Thus, Joshua was awarded parenting time on Tuesday mornings through Thursday afternoons and every other weekend from Saturday morning to Sunday afternoon. He also maintained summer and holiday parenting time as outlined in the original parenting plan, consisting of two nonconsecutive 1-week periods in the summer, and half of the holidays, alternating every year. In addition, Joshua was required to continue to provide health insurance for the child. Using worksheet 1 of the Nebraska Child Support Guidelines, the trial court determined that child support should be modified and reduced to $150 per month to give credit for Joshua's increased parenting time. This represented a decrease from the $346 per month that Joshua had previously been ordered to pay.

Jessica subsequently filed a motion for new trial. The court granted the motion on the issue of child support only, and a new trial was held on June 4, 2013. After trial, the court entered an amendment to the order of modification adopting the joint custody child support worksheet proposed by Joshua. The worksheet established that without deviation, Joshua would owe $76 per month. However, the court deviated from the worksheet and continued the child support amount at $150 as previously ordered. The court found that utilizing worksheet 3 of the child support guidelines along with the upward deviation was proper, fair, and reasonable, and in the best interests of the child.

Jessica then filed a motion to alter or amend the judgment, which was denied. This timely appeal followed.

## ASSIGNMENTS OF ERROR

Jessica assigns, summarized and renumbered, that the district court erred in (1) modifying parenting time, (2) requiring Joshua to provide health insurance for the minor child, and (3) modifying child support.

## STANDARD OF REVIEW

Domestic matters such as child custody, division of property, child support, and alimony are entrusted to the discretion of trial courts. *Gress v. Gress*, 274 Neb. 686, 743 N.W.2d 67 (2007). A trial court's determinations on such issues are reviewed de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Id*. Under this

standard, an appellate court conducts its own appraisal of the record to determine whether the trial court's judgments are untenable such as to have denied justice. *Id.*

Interpretation of the Nebraska Child Support Guidelines presents a question of law, regarding which an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *Gress v. Gress, supra.*

ANALYSIS

Jessica appeals various orders entered by the district court throughout the pendency of this case. For ease of discussion, we will address her arguments by topic.

*Parenting Time.*

Jessica argues that the court's modification of parenting time is erroneous in several respects. We find no abuse of discretion in the modified parenting plan.

Under the Nebraska Parenting Act, a parenting plan shall include:

Apportionment for parenting time, visitation, or other access for each child, including, but not limited to, specified religious and secular holidays, birthdays, Mother's Day, Father's Day, school and family vacations, and other special occasions, specifying dates and times for the same, or a formula or method for determining such a schedule in sufficient detail that, if necessary, the schedule can be enforced in subsequent proceedings by the court . . . .

Neb. Rev. Stat. § 43-2929(1)(b)(ii) (Cum. Supp. 2012). This statute does not require that dates and times for all parenting time be specified; rather, it is permissible that the schedule be sufficiently detailed such that it can be enforced in a later proceeding.

In the present case, Jessica claims that the district court erred in failing to specify summer parenting time for both parties. Joshua was awarded two nonconsecutive weeks of parenting time in the summer and is required to notify Jessica, in writing, by April 30 of the dates he will exercise his summer parenting time and provide her with a general itinerary. A parenting plan is not required to order that the time be exercised on specific dates and times, and thus, this provision is sufficiently detailed to satisfy § 43-2929. As long as Joshua abides by the notification requirement, he is entitled to exercise his summer time during any two nonconsecutive weeks of his choosing.

Jessica was not awarded extended parenting time in the summer, but there is no requirement that she, as the custodial parent, be given extra parenting time in the summer. A reasonable visitation schedule is one that provides a satisfactory basis for preserving and fostering a child's relationship with the *noncustodial* parent. *Vogel v. Vogel*, 262 Neb. 1030, 637 N.W.2d 611 (2002) (emphasis supplied). There is not a certain mathematical amount of visitation that is considered reasonable; the determination of reasonableness is to be made on a case-by-case basis. See *id*. Because Jessica has longer stretches of time with the child every other week during her regular parenting time, we find no abuse of discretion in the court's decision regarding summer parenting time.

Jessica also takes issue with Joshua's regular parenting time as outlined in the modified order. She argues that the order of modification does not accurately reflect the trial court's

decision from the bench, Joshua's parenting time is not sufficiently defined, and the order fails to address regular parenting time for Joshua for periods of unemployment.

After the January 15, 2013, trial, the court ruled from the bench that Joshua would "be awarded the parenting time of his Tuesday, Wednesday, and Thursday" in addition to alternating weekends. In the order, Joshua was granted regular parenting time "on his weekday time off from work, which is currently Tuesday morning through Thursday afternoon at 2:30 p.m." We find that the order accurately reflects the court's oral ruling at trial because, based on our de novo review of the discussions that occurred during trial, it is clear that the district court intended to schedule Joshua's weekday parenting time on the days that he was not working, which at that time were Tuesdays and Wednesdays. We also note that Jessica raised this issue at a hearing before the modification order was entered and that the court rejected her request to change the language. Additionally, the schedule is adequately detailed to satisfy the requirements of § 43-2929 because Joshua's weekday parenting time is clearly indicated to be Tuesday mornings through Thursday afternoons, a schedule which could be enforced at a later proceeding.

Finally, Jessica argues that the district court's order is erroneous because it fails to address parenting time in the event Joshua becomes unemployed. We reject this argument because this is something the district court could not do.

If a judgment looks to the future in an attempt to judge the unknown, it is a conditional judgment. *Vogel v. Vogel, supra*. A conditional judgment is wholly void because it does not perform in praesenti and leaves to speculation and conjecture what its final effect may be. *Id*. In *Vogel*, the Supreme Court vacated provisions in a dissolution decree which ordered new schedules for physical custody of the children in the event the father was transferred overseas and in the event the parents established residences within 50 miles of one another. Whether the orders would ever come into effect was speculative and uncertain, and thus, the Supreme Court found that the judgments were conditional and therefore void. Similarly here, if the district court indicated what would happen to parenting time in the event Joshua became unemployed, the judgment would be conditional because it would depend upon the occurrence of an event which may or may not ever come to fruition. Accordingly, any such order from the court would be invalid.

We understand, to a certain extent, Jessica's complaints and desire to have a parenting plan that is as certain as possible. However, at the same time, the parties must appreciate that not every eventuality or circumstance can be anticipated by a court order and that being an adult and a parent, albeit unmarried, requires communication, cooperation, and empathy. Because Jessica raised these issues before the modification order was entered, and the trial court specifically rejected her requests to change the language of the order, and because the order complies with Nebraska law, we conclude that the district court did not abuse its discretion in its modification of parenting time.

*Health Insurance.*

Jessica asserts that the district court erred in ordering Joshua to continue providing health insurance for the minor child or that in other words, the court erred in refusing to modify the paternity order to require that she provide health insurance for the child. Jessica argues that Joshua's health insurance is not the most economically feasible health care option, the plan

available through her employer is better, and Joshua's employment history is less stable than her own. We find no abuse of discretion with respect to health insurance.

Neb. Rev. Stat. § 42-369(2)(a) (Cum. Supp. 2012) provides in part:

> If the party against whom an order, decree, or judgment for child support is entered or the custodial party has health insurance available to him or her through an employer, organization, or other health insurance entity which may extend to cover any children affected by the order, decree, or judgment and the health care coverage is accessible to the children and is available to the responsible party at reasonable cost, the court shall require health care coverage to be provided.

Because health insurance coverage affects the child support calculations and reimbursement percentages, a material change in circumstances, as required to modify child support, must also be shown in order to modify health insurance coverage for a minor child. See *Freeman v. Groskopf*, 286 Neb. 713, 838 N.W.2d 300 (2013) (party seeking to modify child support order must show material change in circumstances).

In the present case, Jessica's complaint to modify alleged that Joshua's unemployment was a material change in circumstances warranting modification because he no longer had health insurance coverage available to him. By the time trial was held, however, Joshua had found new employment. Thus, there was no material change in circumstances to support modification. At trial, Joshua presented evidence that health insurance was available for the minor child through his new employment at a reasonable cost. We therefore find no abuse of discretion in the district court's refusal to modify health insurance.

*Child Support.*

Jessica asserts that the district court erred in its modification of child support. She claims that the court's use of the joint custody worksheet was erroneous and that the court improperly deviated from the Nebraska Child Support Guidelines. We find no merit to these arguments and therefore affirm the child support modification.

The guidelines provide:

> When a specific provision for joint physical custody is ordered and each party's parenting time exceeds 142 days per year, it is a rebuttable presumption that support shall be calculated using worksheet 3. When a specific provision for joint physical custody is ordered and one party's parenting time is 109 to 142 days per year, the use of worksheet 3 to calculate support is at the discretion of the court.

Neb. Ct. R. § 4-212 (rev. 2011). According to § 4-212, "a 'day' shall be generally defined as including an overnight period."

In *Patton v. Patton*, 20 Neb. App. 51, 818 N.W.2d 624 (2012), we addressed whether the lack of a specific provision for joint physical custody prevents use of the joint custody worksheet when the threshold amount of parenting time is met for application of the rebuttable presumption. We found that under the circumstances of that case, it did not. In *Patton*, the parties were awarded joint legal custody, but primary physical custody of the children was awarded to the mother. The father, however, had parenting time with the children at least 160 days per year, which was roughly 45 percent of the year. The order also required the noncustodial parent to pay for his proportionate share of all reasonable and necessary direct expenditures for the children,

such as clothing, schooling, extracurricular activities, and school-related expenses. Thus, we concluded that the father should be deemed to have joint physical custody for purposes of the child support calculation and found no error in the district court's use of the joint custody support worksheet.

Likewise in the present case, although the parties enjoy joint legal custody, sole physical custody remains with Jessica. Under the modified parenting plan, according to worksheet 3, Joshua has the child only 130 days per year, which the court calculated to be approximately 36 percent of the time. Unlike *Patton*, the modified order does not require Joshua to pay for his proportionate share of all reasonable and necessary direct expenditures for the child, such as clothing, schooling, extracurricular activities, and school-related expenses. Under these facts, and absent an express provision that the parties have joint physical custody, we determine that the court erred in using worksheet 3 to calculate Joshua's child support payments.

However, using worksheet 3, the court determined that the circumstances of the case required an upward deviation to $150 per month. This is the same amount that the court arrived at in its original modification order by deviating downward from the calculation used in worksheet 1. Since the court's determination of the required amount of child support was the same using worksheet 3 as it was when using worksheet 1, we find this error to be harmless, and we find no abuse of discretion in determining that Joshua should be required to pay $150 per month.

Jessica also claims that the district court erroneously deviated from the guidelines because the amount of support owed without deviations was not stated, no reason for deviating was given, and the court failed to provide worksheet 5 of the child support guidelines. We disagree.

In general, child support payments should be set according to the Nebraska Child Support Guidelines. *Pearson v. Pearson*, 285 Neb. 686, 828 N.W.2d 760 (2013). The guidelines "shall be applied as a rebuttable presumption," and "[a]ll orders for child support obligations shall be established in accordance with the provisions of the guidelines unless the court finds that one or both parties have produced sufficient evidence to rebut the presumption that the guidelines should be applied." Neb. Ct. R. § 4-203 (rev. 2011).

Under the guidelines, a deviation in the amount of child support is allowed whenever the application of the guidelines in an individual case would be unjust or inappropriate. *Pearson v. Pearson, supra*. Deviations from the guidelines must take into consideration the best interests of the child or children. *Id*. All orders concerning child support, including modifications, should include the appropriate child support worksheets. *Id*. In the event of a deviation from the guidelines, the trial court should state the amount of support that would have been required under the guidelines absent the deviation and include the reason for the deviation in the findings portion of the decree or order, or complete and file worksheet 5 in the court file. *Id*.

In this case, the trial court attached worksheet 3 to the amendment to the order of modification, showing that without deviation, Joshua would owe Jessica $76 per month in child support. The court determined, however, that an upward deviation was fair, reasonable, and in the best interests of the child, and thus, the court ordered that Joshua pay $150 per month. Although we have found error in the court's use of worksheet 3, we note that the trial court attached worksheet 1 to the original order of modification, showing that without deviation,

Joshua would owe Jessica $347 per month in child support. In that order, the court determined that a downward deviation was fair, reasonable, and in the minor's best interests because of Joshua's increased parenting time. Because the reason for deviation was stated in the order, the court was not required to complete and attach worksheet 5. Accordingly, we find no abuse of discretion in the child support modification.

## CONCLUSION

We conclude that the district court did not abuse its discretion in its modification of parenting time, health insurance, or child support. We therefore affirm the district court's order.

AFFIRMED.