IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

RUSINKO V. RUSINKO

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JENNIFER N. RUSINKO, APPELLEE,

V.

ROBERT J. RUSINKO, APPELLANT.

Filed April 3, 2018.    No. A-17-776.

Appeal from the District Court for Dodge County: GEOFFREY C. HALL, Judge. Affirmed.

Shane J. Placek, of Sidner Law, for appellant.

Monica Green Kruger for appellee.

PIRTLE, BISHOP, and ARTERBURN, Judges.

ARTERBURN, Judge.

### INTRODUCTION

Robert J. Rusinko appeals an order of the district court for Dodge County which modified the parties' decree of dissolution. Robert assigns that the district court erred in denying his request for sole physical custody, modifying the parenting time schedule between the parties, and calculating child support. For the reasons set forth below, we affirm.

### BACKGROUND

Robert and Jennifer N. Rusinko were divorced pursuant to an agreed-upon decree entered September 14, 2015. The parties have three children: Madisen, born in 2000; Rylee, born in 2002; and Sophia, born in 2008. The parties were awarded joint legal and physical custody of the children. The parenting plan adopted by the parties was a "2-2-3" alternating schedule. Neither party paid child support. Robert was obligated to provide medical insurance for the children, and Jennifer was responsible for the children's dental insurance.

Robert filed a complaint to modify the decree on July 27, 2016. He alleged a material change in circumstances had occurred due to Jennifer moving from Fremont to Omaha. Robert requested that he be awarded sole legal and physical custody of the children. He also requested that child support be established in accordance with the Nebraska Child Support Guidelines. Jennifer filed her answer on October 14, 2016, denying that a material change in circumstance had occurred. A trial was held on April 14, 2017.

Robert was 37 years old at the time of trial. He had graduated high school and attended the University of Nebraska-Kearney for 2 years. Robert lives in Fremont, Nebraska, and has worked at a chemical company there for 11 years. He works Monday to Friday, 7:30 a.m. to 4 p.m. as well as some regularly scheduled overtime. Robert's residence has four bedrooms and is a 5-minute drive from Fremont High School, where two of the parties' children attend. Robert's parents live in Fremont and assist with the children once per week, as well as whenever a child is ill.

Robert testified that his primary motivation for filing for modification was that he did not want his children to have to commute between Omaha and Fremont on such a frequent basis. Robert does not believe that the highway traveling is safe, especially for his daughters who will soon be able to drive. At trial, both parties testified that they could jointly make major life decisions for their children. As a result, Robert has abandoned his contention that he should be granted sole legal custody.

At the time of the entry of the decree, both parties lived in Fremont. Jennifer worked as a registered nurse at Nye Legacy, in Fremont. On March 28, 2016, Jennifer sent Robert a letter via certified mail that she intended to move to Omaha. Jennifer moved to Omaha in order to live with her significant other, Seth. His home is located in the Ponca Hills neighborhood of Omaha. It has three bedrooms and two non-conforming bedrooms. Jennifer lives at the home with Seth, her three children when she has parenting time, and on a less frequent basis, two of Seth's children when he has parenting time. The evidence established that at the time of trial, Seth was estranged from one of his minor children and was exercising only therapeutic visitation with another. Jennifer testified that it takes approximately 30 to 35 minutes to drive from her residence to Fremont High School. Other estimates indicated that it could take up to 40 minutes to make the drive.

Jennifer began working at Lakeside Hospital in Omaha in November 2016. She works three 12-hour shifts per week. To this point, she has been required to work the night shift (7 p.m. to 7 a.m.) and must work on weekends at times. For the most part however, she has been able to schedule her work days to coincide with days she does not have parenting time.

Rylee testified in chambers during the trial. The parties also stipulated to the receipt of Madisen's deposition testimony in lieu of live testimony. Madisen and Rylee have always attended Fremont Public Schools, and Sophia has always attended Grant Elementary School in Fremont. Madisen and Rylee begin their school day at 7:50 a.m. and Sophia begins at 8 a.m., however on the days that they begin at their father's home they arrive early due to his work schedule. Rylee and Madisen participate in orchestra and Rylee is in the photo club. Other than concerts, both of these activities occur during the school day. Rylee was previously involved in track and field, but quit during the 2016-17 school year due to difficulties managing her time between completing homework, extracurricular activities, and commuting between Omaha and Fremont. She testified this problem was most acute during days where she travelled to Omaha at night. Both Madisen and Rylee testified that they wanted to stay in Fremont more. Reasons given included a desire to

participate in track, spend time with friends, and work summer jobs. The children's wake-up time was approximately the same regardless of location as Robert's need to drop the children at school early offset the commuting time from Omaha. The commute had not resulted in the children being tardy for school.

At the close of evidence, the district court took the matter under advisement. The district court announced its findings orally on April 20, 2017. A written order of modification was entered on July 6. The district court found that Jennifer's permanent move to Omaha constituted a material change in circumstance allowing for modification of the decree. The court determined that joint legal and physical custody should continue. However, the court found that the parenting time should change to a week on/week off schedule with each parent getting one evening period of parenting time during the other parent's week. The court stated the following rationale at the hearing:

> Now, for physical custody, based on all the evidence, based on the equities and the law, you've got three daughters. They're growing up. Things are changing. Their priorities are changing. Your daughter testified in chambers, and I'm confident that neither one of you interrogated her to find out what she said, but to sum it up, she's -- I kind of agree with Mom, in her life, friends, social life is probably the top thing. That could change. That could change next month, but kids don't get to decide where they go. They can't even decide what they want to eat for lunch or what they're going to wear.

> All right. So, parents have to be in charge and you're not their best buddy, but you need to do what's best for them. And, so, what I'm going to order is that there will be joint physical custody. I'm going to change what was originally ordered. That is not workable for the distance that now lies between you. Everything that I heard is the new step-dad-to-be, and we've got a date, so it's going to happen, is a decent guy, and the girls respect him, and they could work with him. And he can help out in this situation because you're all going to have to work together.

The district court's child support calculation determined that Jennifer should pay $161 per month for three children, $142 per month for two children, and $102 per month for one child. However, the district court specifically found that a deviation was warranted and that neither party should pay child support to the other. The order also required both parents to provide medical insurance for the children, and eliminated the right of first refusal for childcare.

## ASSIGNMENTS OF ERROR

Robert argues, restated, that the district court erred in (1) failing to award him sole physical custody of the children and modifying the parenting time schedule from a "2-2-3" alternating schedule to a week on/week off schedule and (2) erred in its calculation of child support and refusing to award him any child support.

## STANDARD OF REVIEW

Modification of a dissolution decree is a matter entrusted to the discretion of the trial court, whose order is reviewed de novo on the record, and which will be affirmed absent an abuse of discretion. *Hopkins v. Hopkins*, 294 Neb. 417, 883 N.W.2d 363 (2016). A judicial abuse of

discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Stephens v. Stephens*, 297 Neb. 188, 899 N.W.2d 582 (2017).

## ANALYSIS

Robert argues the district court abused its discretion by failing to award him sole physical custody of the children given Jennifer's voluntary relocation to Omaha coupled with the children's wishes to remain living with him in Fremont. Further, Robert argues that the district court's determination to modify the parenting time from a "2-2-3" alternating schedule to a week on/week off schedule was an abuse of discretion since neither party requested this specific allocation of parenting time. Finally, Robert argues the district court erred in its calculation of child support and abused its discretion in failing to require Jennifer to pay child support.

### PHYSICAL CUSTODY

In a child custody modification action the party seeking modification must demonstrate first that a material change in circumstances has occurred after the entry of the previous custody order which affects the best interests of the child and that it is in the child's best interests that custody be changed. *Hopkins, supra*. A material change in circumstances means the occurrence of something which, had it been known at the time of the initial decree, would have persuaded the court to decree differently. *State on behalf of Jakai C. v. Tiffany M.*, 292 Neb. 68, 871 N.W.2d 230 (2015). The party seeking modification of child custody bears the burden of showing as an initial matter that there has been a change in circumstances. *Id.*

The child's best interests require a parenting arrangement and plan which provides for a child's safety, emotional growth, health, stability, physical care, and regular and continuous school attendance and progress. Neb. Rev. Stat. § 43-2923 (Reissue 2016). Moreover, § 43-2923 sets forth a non-exhaustive list of factors to be considered in determining the best interests of a child in regard to custody. Such factors include the relationship of the minor child with each parent, the desires of the minor child, the general health and well-being of the minor child, and credible evidence of abuse inflicted on the child by any family or household member. Specifically regarding the desires of a minor child, the statute provides that the court should consider "[t]he desires and wishes of the minor child, if of an age of comprehension but regardless of chronological age, when such desires and wishes are based on sound reasoning." § 43-2923(6)(b). The Nebraska Supreme Court in applying this provision has stated that while the wishes of a child are not controlling in the determination of custody, if a child is of sufficient age and has expressed an intelligent preference, the child's preference is entitled to consideration. *Vogel v. Vogel*, 262 Neb. 1030, 637 N.W.2d 611 (2002). The Supreme Court has also found that in cases where the minor child's preference was given significant consideration, the child was usually over 10 years of age. *Id.*

Here, the district court specifically found that it believed that the children's stated interests as to which parent they wanted to reside with was based on social interactions with friends. The court stated that the children did not have much decisionmaking authority at the time. The court determined that it was in the best interests of the children that they spend an equal amount of time with both parents. The district court also determined that as a result of the distance between the

parents, it was in the children's best interests that the parenting time schedule be modified to a week on/week off schedule.

Upon our de novo review of the record, we find the district court did not abuse its discretion in finding that Jennifer's relocation to Omaha constituted a material change in circumstances. We further find that the district court did not abuse its discretion in finding that joint legal and physical custody should continue. The evidence demonstrated that outside of the issues occasioned by Jennifer's move, the parties were generally able to communicate and work together to raise their children. While we understand that the additional travelling may work hardships on the children at times, we must give deference to the district court which had the opportunity to see and hear the testimony of the witnesses, assess their credibility and in the case of the children, their maturity. Finally, we find that the modification of the parenting time from a "2-2-3" alternating schedule to a week on/week off schedule was not an abuse of discretion.

CHILD SUPPORT

Robert argues the district court erred in its calculation of child support. Robert first argues that the district court improperly allowed a health insurance deduction to Jennifer. He then argues that the district court abused its discretion by deviating from the Nebraska Child Support Guidelines and waiving Jennifer's obligation to pay the child support found to be due under its calculation. Jennifer argues that Robert's income is underrepresented in the district court's calculation.

We find that while errors may exist in the district court's calculations as to the amount of Robert's income and the various deductions for the cost of health insurance, there was no abuse of discretion as to the court's ultimate decision. First, the district court's decision to require both parties to provide health insurance was not an abuse of discretion given the low cost of insurance demonstrated in the evidence and the resulting coverage afforded the children. As to the calculation that was prepared, it does appear to us that Robert's regular occurring overtime pay should have been included. We also believe that the deductions for the cost of health and dental insurance for the children and the parents do not accurately reflect the evidence adduced. A calculation performed by this court resulted in a lower amount due from Jennifer than that found by the district court. While our calculation would result in a small increase in the amount of child support due as compared to the agreed upon calculation attached to the original decree, we note that the parties in that decree agreed that no child support be paid. With that in mind, we cannot say that the small increase in child support found in our calculation constitutes a material change of circumstance justifying a departure from the party's previous agreement. Consequently, we cannot find that the district court abused its discretion in reducing Jennifer's child support obligation to zero.

CONCLUSION

We find the district court did not abuse its discretion by continuing to place the children in the joint legal and physical custody of the parties or by modifying the parenting time schedule. Additionally, we find that the district court did not abuse its discretion in ordering that no child support be paid.

AFFIRMED.